**Jessie CALVIN, Plaintiff–Appellee,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellant.**

**Nos. 95–5372, 95–5438.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 16, 1995.

Decided Jan. 9, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 16, 1996.

Eugene C. Gaerig (argued and briefed), Hartsfield & Gaerig, Memphis, TN, for Jessie Calvin.

Robert S. Greenspan, U.S. Dept. of Justice, Appellate Staff, Civil Div., Mark C. Niles (briefed), U.S. Dept. of Justice, Appellate Staff, Civil Div., John C. Dwyer (argued), U.S. Dept. of Justice, Office of the Associate Atty. Gen., Washington, DC, for Commissioner of Social Security.

Before: LIVELY, NELSON, and SUHRHEINRICH, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

Where a person asserting a claim for Supplemental Security Income benefits asks that a reporting physician be subpoenaed to testify on cross-examination at the claimant's hearing before an administrative law judge, must the request for a subpoena be honored even if the claimant has failed to justify the request in the manner prescribed by the applicable social security regulations? Concluding that the right to subpoena a reporting physician is "absolute," the district court answered this question in the affirmative and remanded the case at bar to the Secretary of Health and Human Services so that the physician could be subpoenaed for cross-examination.[1]

We do not believe that a claimant is entitled to ignore the requirements of the regulations, as clearly happened here. It follows that the ALJ did not abuse his discretion in denying the request for issuance of a subpoena. We shall reverse the remand order and instruct the district court to decide the mer-

---

1. The functions of the Secretary in social security cases were subsequently transferred to the Commissioner of Social Security, who has been sub- stituted for the Secretary as the defendant herein.

its of the case on the basis of the record as it now stands.

I

Asserting that he had become disabled in May of 1986, following a hospitalization for acute kidney failure and other problems resulting from excessive dosages of the blood thinner Coumadin, the claimant, Jessie Calvin, applied for Supplemental Security Income benefits in June of that year. The claim was denied administratively, and Mr. Calvin did not appeal. Some three years later, however, he was notified that he was entitled to a review of his claim as a member of the class designated in *Samuels v. Heckler*, 668 F.Supp. 656 (W.D.Tenn.1986). The Secretary undertook to determine whether Mr. Calvin had been disabled between June 13, 1986 (the date he filed his claim), and July 29, 1986 (the date of the administrative denial of the claim). Mr. Calvin was invited to file a new claim if he had evidence of a health problem subsequent to July 29, 1986, but no such claim was filed. At some point, however, Mr. Calvin did file an undated "petition to reopen case," asking for SSI benefits from May 1, 1986, forward.

The agency referred Mr. Calvin to Dr. Thomas Rawlinson for a medical assessment. Dr. Rawlinson conducted an examination on December 15, 1989, and prepared a report indicating that there had been a complete resolution of all medical problems resulting from the Coumadin toxicity in 1986. The report was accompanied by a two-page medical assessment form. Although Dr. Rawlinson left the form largely blank, he checked a box on it indicating that "[t]he patient has no impairment-related physical limitations."

Dr. Rawlinson's report was consistent with an earlier report prepared by Dr. Keith Menees, who examined Mr. Calvin at the request of the latter's lawyer on May 29, 1986. Dr. Menees found that Mr. Calvin's kidney function was within normal limits. The doctor went on to opine, subject to what an abdominal CT might show, that there was probably no permanent damage from the Coumadin episode.

Unlike Dr. Rawlinson, Dr. Menees had a policy of not completing social security medical assessment forms. He never filled out such a form for Mr. Calvin, and his failure to do so appears to have been the reason for the referral to Dr. Rawlinson.

Following a new administrative denial of Mr. Calvin's claim, a hearing was scheduled for October 30, 1990, before an administrative law judge. Eight days before the hearing the claimant's lawyer sent the ALJ a letter taking exception to Dr. Rawlinson's report and the accompanying medical assessment form. "Under the United States Constitution, the Social Security Administration Act, [and] the Administrative Procedures [sic] Act," said the letter, "I respectfully ask this Honorable Court to subpoena ... the consulting doctor, Dr. Thomas Rawlinson for cross-examination. Otherwise, I respectfully pray that the Court disallow Dr. Rawlinson's [report and medical assessment]."

The pertinent regulation, 20 C.F.R. § 416.1450(d), authorizes an ALJ to issue a subpoena *ad testificandum* "[w]hen it is reasonably necessary for the full presentation of a case...." § 416.1450(d)(1). The regulation goes on to provide as follows:

"Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge ... at least 5 days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 416.1450(d)(2).

The subpoena request in question here did not suggest that Dr. Rawlinson was biased in any way. It referred to no "important facts" expected to be developed through cross-examination. Neither did the request indicate why any such facts could not be proved through written interrogatories or other means not involving the issuance of a subpoe-

na.[2] The ALJ denied the request by letter dated October 25, 1990, and Dr. Rawlinson's report was among the exhibits admitted at the hearing.

After the hearing the ALJ issued a decision denying the claim for benefits. In a portion of the decision captioned "Procedural History," the ALJ gave the following explanation of his reasons for denying the request for a subpoena:

> "Although the Social Security Regulations allow a party to request that the Administrative Law Judgeissue a subpoena for the appearance and testimony of witnesses when it is 'reasonably necessary for the full presentation of a case,' this is a discretionary privilege and has certain prerequisites (20 CFR 416.1450(d)(1)(2)). Parties to a hearing who wish to subpoena witnesses must file a written request giving the names and addresses of the witnesses; stating the important facts that the witness is expected to prove; and indicating why these facts could not be proven without issuing a subpoena. This Administrative Law Judge notes that Counsel for the claimant did not take actions to satisfy the prerequisites of 20 CFR 416.1450(d)(2). Moreover, this Administrative Law Judge finds that it would serve no useful purpose to subpoena Dr. Rawlinson since interrogatories could serve the same purpose. *Berger v. Secretary,* 835 F.2d 635 (6th Cir. 1987) ('denial of Mrs. Berger's subpoena request did not prevent her from receiving a fair and full hearing before the Administrative Law Judge')."

Mr. Calvin took an appeal to the Appeals Council, arguing among other things that the ALJ had erred in refusing to subpoena Dr. Rawlinson. The Appeals Council remanded the case to the ALJ on other grounds, without addressing the subpoena issue.

A new hearing was held before the ALJ on April 30, 1992, at which time Mr. Calvin's counsel renewed his objection to Dr. Rawlinson's report and medical assessment. The ALJ nonetheless gave consideration to these documents, together with all other documents identified as exhibits in the record. In

a decision issued on June 18, 1992, the ALJ again denied the claim for benefits.

Again Mr. Calvin sought review by the Appeals Council. The Appeals Council denied review, allowing the ALJ's June 18 decision to stand as the final decision of the Secretary.

Mr. Calvin then sought judicial review in the United States District Court for the Western District of Tennessee. Citing *Lidy v. Sullivan,* 911 F.2d 1075, 1077 (5th Cir. 1990), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991), and *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the district court held that Mr. Calvin had an absolute right, based on due process considerations, to conduct a live cross-examination of the examining physician. The case was remanded to the Secretary to permit such a cross-examination. In response to a motion to alter or amend the remand order, the district court later made a change not pertinent to this appeal; the court reaffirmed its decision on the subpoena issue. The Commissioner then perfected a timely appeal to this court.

## II

In § 205(a) of the Social Security Act, 42 U.S.C. § 405(a), Congress gave the Secretary "full" rule-making power. The Secretary was directed to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same...." *Id.*

Pursuant to this statutory authorization, the Secretary promulgated the regulation codified at 20 C.F.R. § 416.1450(d). As we have seen, the regulation authorizes the issuance of subpoenas when "reasonably necessary for the full presentation of a case," § 416.1450(d)(1), and requires the party desiring a subpoena to file a written request indicating why a subpoena is necessary and stating the "important facts" that the subpoenaed witness or document is expected to prove. Section 416.1450(d)(2). We presume

---

**2.** Mr. Calvin's lawyer acknowledged, during telephonic argument of the present appeal, that the

request for a subpoena did not meet the requirements of the regulation.

that the regulation is valid—see *Marshall v. Whirlpool Corp.*, 593 F.2d 715, 721–22 (6th Cir.1979), *aff'd*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980)—and Mr. Calvin has offered no explanation of how the regulation might be said to fall short of the statutorily prescribed "reasonable and proper" standard.[3]

■ Notwithstanding his failure to comply with the requirements of the regulation, Mr. Calvin argues that the Administrative Procedure Act gives him an "absolute right to cross-examine adverse witnesses and to have them subpoenaed for full and true disclosure of the facts." See, in this connection, 5 U.S.C. § 556(c)(3), which permits administrative hearing officers to "issue subpenas authorized by law," and 5 U.S.C. § 556(d), which provides in part that "[a] party is entitled ... to conduct such cross-examination as may be required for a full and true disclosure of the facts."

This court has said that social security hearings must conform to the requirements of the Administrative Procedure Act. *Mullen v. Bowen*, 800 F.2d 535, 536 n. 1 (6th Cir.1986) (en banc). In providing for the issuance of subpoenas authorized by law, however, the Act explicitly says that the permission to issue such subpoenas is "[s]ubject to published rules of the agency...." 5 U.S.C. § 556(c).

■ The published agency rule with which we are concerned here permits a witness to be subpoenaed for cross-examination *if* the party applying for the subpoena provides the agency a timely written explanation of why the subpoena is reasonably necessary for full presentation of the case. This rule—a rule with which Mr. Calvin admits he did not comply—is not in conflict with 5 U.S.C. § 556(d), because it does not prevent a party who complies with its terms from putting himself in a position "to conduct such cross-examination as may be required for a full and true disclosure of the facts." If the party demonstrates, in the manner required by the

rule, that cross-examination really is required, the subpoena will presumably be issued.

■ A full and true disclosure of the facts can sometimes be achieved without cross-examination, obviously. And although Dr. Rawlinson's report constituted hearsay evidence on which the doctor could not be cross-examined if he were not present, hearsay evidence is not automatically excluded in social security proceedings. See the last sentence of 42 U.S.C. § 405(b), which provides that "[e]vidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure."

■ It is far from self-evident that cross-examination of Dr. Rawlinson was in fact necessary. For one thing, Dr. Rawlinson examined Mr. Calvin more than three years after the end of the period (June 13–July 29, 1986) with respect to which the ALJ had undertaken to determine whether Mr. Calvin was disabled. Dr. Menees, on the other hand, examined Mr. Calvin just two weeks before the period began, at a time only two months after the hospitalization for Coumadin toxicity. Dr. Menees' finding that Mr. Calvin's kidney function had already returned to normal by May 29 is far more probative of the claimant's condition in June and July of 1986 than is the examination that Dr. Rawlinson conducted in December of 1989.

■ Even if Dr. Rawlinson was a crucial witness, moreover, his findings do not contradict other medical evidence, and there has been no suggestion of bias on his part. These circumstances clearly distinguish the case at bar from *Solis v. Schweiker*, 719 F.2d 301 (9th Cir.1983), where a claimant who asked to cross-examine for bias a crucial medical witness whose report was in substantial conflict with the reports of other doctors was held to have a due process right to the granting of his request for a subpoena. In

---

**3.** Although we speak of Mr. Calvin in the present tense, his lawyer advised us several weeks after the oral argument that Mr. Calvin is no longer living. We take it that Mr. Calvin's death does not render the claim for SSI benefits moot. See

58 Fed.Reg. 52909 (Oct. 13, 1993), amending 20 C.F.R. Part 416 to reflect a statutory expansion of the agency's authority to pay SSI benefits in respect of persons who are deceased.

so holding, the Ninth Circuit explicitly affirmed that an ALJ "has discretion to decide when cross-examination is warranted." *Id.* at 302. *Cf. Berger v. Sect'y of HHS*, 835 F.2d 635, 640 (6th Cir.1987) ("the agency's regulations afford it discretion to deny the request").

If Dr. Rawlinson had been subpoenaed to testify at the hearing of April 30, 1992—the hearing that led to the Secretary's final denial of Mr. Calvin's claim—it is most unlikely that the doctor would have had any independent recollection of the medical examination he conducted more than two years earlier. See *Long v. United States*, 59 F.2d 602, 603–604 (4th Cir.1932) ("Judge Parker's well-known ruling," explicitly embraced by the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 405, 91 S.Ct. 1420, 1429, 28 L.Ed.2d 842 (1971)), holding reports comparable to Dr. Rawlinson's admissible under an exception to the hearsay rule. When the authors of such reports do take the stand, Judge Parker observed, their testimony

> "is ordinarily a mere recital of what is contained in their reports, to which they must look for the purpose of refreshing the memory; and every one with experience in conducting litigation knows that as a matter of fact such reports are more reliable than the memory of the witnesses who made them, and that, if a witness without giving good reason therefor would contradict the statements contained in the reports, the reports would be accepted by any trier of facts in preference to the oral testimony. The examining physicians of the government examine hundreds of disabled soldiers. The written record of an examination made at the time is undoubtedly more trustworthy than the treacherous memory of a busy man dealing with many cases having many points of similarity. It is clear, therefore, not only that it is necessary as a practical matter that these reports be received if evidence is to be had of the matters to which they relate, but also that they are more dependable than would be the oral testimony of the witnesses who made them, and are, in reality, the best evidence obtainable as to such matters."

Relying in part on Judge Parker's opinion in *Long*, the Supreme Court decided in *Richardson v. Perales* that reports of examining physicians who had not been called to testify at a disability hearing could be relied upon as "substantial evidence" sufficient to justify denial of the claim for benefits, notwithstanding that the only witnesses who gave live testimony were witnesses supporting the claim. "[W]hen the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity to cross-examination of the physician," the Supreme Court held, the physician's written report "may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant...." *Perales*, 402 U.S. at 402, 91 S.Ct. at 1428.

We do not read *Perales* as suggesting that the right to subpoena witnesses is "absolute" in the sense that a party who requests a subpoena is automatically entitled to its issuance whether or not he has complied with the published rules governing such matters. The *Perales* Court thought it worthy of mention that the cost of providing live medical testimony "where need has not been demonstrated by a request for a subpoena ... would be a substantial drain on the [social security] trust fund and on the energy of physicians already in short supply." *Id.* at 406, 91 S.Ct. at 1430. The claimant in *Perales* had not requested a subpoena at all, but if he had filed a request that failed to demonstrate need in the manner required by the regulations, we assume that the result would have been the same.

The Court of Appeals for the Fifth Circuit, describing the passage quoted above as less than "pellucid," has apparently made the opposite assumption. See *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir.1990). The *Lidy* court noted that subsequent to the passage from page 406 of *Perales* [91 S.Ct. at 1430], the Supreme Court "refers to 'the use of the subpoena and consequent cross-examination,' *id.* at 410, 91 S.Ct. at 1431, suggesting that such cross-examination necessarily follows from the filing of a request for a subpoena." *Lidy*, 911 F.2d at 1077. But we do not see why cross-examination should necessarily follow from the filing of a subpoena

request that fails to comply with a regulation requiring that there be some showing of an actual need for cross-examination.

The statutory standard prescribed by the Administrative Procedure Act, as the *Perales* Court said in the very paragraph of which we are speaking, *id.* at 410, 91 S.Ct. at 1431–32, is one under which a party is entitled to conduct "such cross-examination as may be required for a full and true disclosure of the facts." See 5 U.S.C. § 556(d). "That is the standard," said the *Perales* Court. "It is clear and workable and does not fall short of procedural due process." *Perales,* 402 U.S. at 410, 91 S.Ct. at 1431. If the party requesting a subpoena does not even attempt to show that the cross-examination he seeks is required for a full and true disclosure of the facts, we do not think it necessarily follows that he is entitled to a subpoena anyway.

It is true, as *Lidy* observes, that when the *Perales* Court spoke of the claimant's non-exercise of "his right to subpoena the reporting physician," the Court did not speak of the "right to request a subpoena." *Lidy,* 911 F.2d at 1077. But there was no reason for the Supreme Court to have done so; the claimant in *Perales* had made no subpoena request at all, and the Court was not being asked to decide whether he would have been entitled to a subpoena if he had filed a request that did not conform to the requirements of the governing regulation. It is not likely, in our view, that the Court intended to suggest that the claimant has a right exercisable without regard to the regulatory requirements.

Unlike Mr. Calvin, the claimant in *Lidy* submitted a set of written interrogatories to the reporting physician. The answers to the interrogatories were "vague and evasive," according to the claimant, and the request for a subpoena was reasserted on that basis. *Lidy,* 911 F.2d at 1076. Under these circumstances, it may well be that the claimant's showing of need for a subpoena was strong enough to compel the conclusion that the ALJ abused his discretion in denying the request. The Fifth Circuit did not rest its decision on that ground, however. To the extent that *Lidy* and the precedents cited

therein may hold that any written request to subpoena a reporting physician must be granted automatically, we respectfully disagree.

If "[d]ue process requires that a claimant be given an opportunity to cross-examine and subpoena the individuals who submit reports," see *Coffin v. Sullivan,* 895 F.2d 1206, 1212 (8th Cir.1990), it does not seem to us that the agency charged by statute with responsibility for issuing regulations telling claimants how to avail themselves of this opportunity is constitutionally precluded from prescribing reasonable and proper requirements of the sort found in 20 C.F.R. § 416.1450(d). See generally *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Mr. Calvin's lawyer ignored those requirements at his peril, in our judgment.

Accordingly, the remand order is **REVERSED,** and the case is remanded to the district court for further proceedings not inconsistent with this opinion.