# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2023

Lyle W. Cayce
Clerk

No. 22-60541
Summary Calendar

---

Michele Miller,

*Plaintiff—Appellant*,

*versus*

Kilolo Kijakazi, Acting Commissioner of Social
Security,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:20-CV-382

---

Before Davis, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant, Michelle Miller, appeals the district court's judgment affirming the Commissioner's denial of disability benefits she sought from the Social Security Administration (SSA). For the reasons set forth below, we AFFIRM.

---

* This opinion is not designated for publication. See 5th Cir. R. 47.5.

No. 22-60541

## I.

Applying the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4), the Administrative Law Judge (ALJ) determined that Miller was not disabled from her alleged onset disability date of September 28, 2018, through the date of the ALJ's decision, March 24, 2020. Specifically, at step one, the ALJ determined that Miller had not engaged in substantial gainful activity since September 28, 2018. At step two, the ALJ found that Miller's obesity, fibromyalgia, degenerative disc disease, and diabetes mellitus with lower extremity neuropathy qualified as "severe" impairments as defined by SSA regulations. At step three, the ALJ concluded that Miller's impairments did not meet or medically equal a listed impairment for presumptive disability. At step four, the ALJ determined that Miller retained the residual functional capacity (RFC) to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) with some limitations. Relying on vocational expert (VE) testimony, the ALJ determined that Miller retained the ability to perform her past relevant work as an account clerk, bookkeeper, and travel clerk. The ALJ therefore concluded that Miller was not disabled and thus not entitled to disability benefits.

The Appeals Council denied Miller's request for review, and the ALJ's decision became the Commissioner's final administrative decision. Miller then sought judicial review in federal district court, which affirmed the Commissioner's decision. Miller timely appealed to this Court.

## II.

We review the "Commissioner's denial of social security disability benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijazaki*, 19 F.4th 715, 718 (5th Cir. 2021) (internal quotation marks and citation omitted). "Substantial

No. 22-60541

evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence must be more than a scintilla, it need not be a preponderance." *Id.* (internal quotation marks and citation omitted). Furthermore, "[w]e will not re-weigh the evidence nor, in the event of evidentiary conflict or uncertainty, will we substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (internal quotation marks and citation omitted).

## A.

Miller argues that the ALJ failed to consider all of the medical opinions contained in Exhibits 15F and 17F of the administrative record. Specifically, Miller focuses on certain words in the ALJ's decision that were written in the singular form. Miller asserts that the use of the singular form shows that the ALJ considered only one medical opinion when her evidence contained multiple opinions.

Miller's argument, however, is belied by the ALJ's extensive discussion in her decision of all of the evidence Miller submitted. With regard to Exhibit 15F, which contained medical records from the Hattiesburg Clinic, the ALJ specifically noted the results of an EMG/nerve conduction study suggesting "mild neuropathy." The ALJ further noted the "pre and post procedure diagnoses" of "[c]hronic mid to lower back pain with right-sided sciatica and diabetic peripheral neuropathy signed by Dr. Mitchell" of the Hattiesburg Clinic. Citing to Exhibit 15F, the ALJ also specifically noted

No. 22-60541

that the records indicated that the provider[1] did not place Miller on leave and or fill out disability paperwork for Miller.

Exhibit 17F contained numerous treatment notes from Riser Medical Associates. It also contained a form filled out by Dr. Riser, and two forms filled out by Nurse Practitioner Sanders, relating to Miller's eligibility for disability benefits from a private insurer and describing Miller's functional capabilities. The ALJ referred to Exhibit 17F throughout her decision. She specifically noted the "records from Riser Medical Associates" documenting Miller's complaints of back pain and her requests for refills of narcotic pain medication. When the ALJ turned to "medical opinions" contained in the record, the ALJ (as noted by the district court) specifically cited to Exhibits 15F and 17F. Although the ALJ used both singular and plural forms of certain words, her decision clearly reflects that she reviewed all of the records, notes, and opinions contained in Exhibits 15F and 17F. Therefore, Miller's argument that the ALJ did not consider all of the medical opinions contained in Exhibits 15F and 17F is without merit.

## B.

Miller also argues that the ALJ erroneously "disregarded" medical opinions simply because they were issued in connection with her claim for short-term disability benefits from a private insurer and not exclusively for social security disability benefits. Close review of the ALJ's decision indicates, however, that the ALJ did consider the medical opinions contained in Miller's short-term disability insurance paperwork, but did not find "the opinions of the claimant's medical source reflected in the *statements*

---

[1] Although the ALJ does not name the provider, Exhibit 15F contains records only from the Hattiesburg Clinic, and the specific form referred to was addressed to Dr. Riser but apparently filled out by L.P.N. Bianchini also with the Hattiesburg Clinic.

completing the short-term disability insurance paperwork *indicating the claimant was unable to work* to be persuasive." (emphasis added). Under 20 C.F.R. § 404.1520b(c)(3)(i), statements that a claimant is or is "not disabled, blind, able to work, or able to perform regular or continuing work" are "[s]tatements on issues reserved to the Commissioner" and deemed "inherently neither valuable nor persuasive." An ALJ is specifically relieved from providing any analysis about how such evidence was considered. § 404.1520b(c).

The ALJ herein further noted: "Although [Miller] received some short-term disability insurance benefits through her employer these benefits are payable using different standards than those utilized by SSA." The ALJ did not err in making such statement. As observed in 20 C.F.R. § 404.1504, "Other governmental agencies and nongovernmental agencies—such as . . . private insurers, make disability, . . . and other benefits decisions for their own programs using their own rules." The regulation further provides that because a decision by such an entity "is based on its rules, it is not binding on us." § 404.1504. Furthermore, the regulation does not require the ALJ to provide any analysis of a decision made by a nongovernmental entity about whether a claimant is entitled to any benefits.

As Miller points out, the regulation does require an ALJ to "consider all of the supporting evidence underlying the . . . nongovernmental entity's decision" submitted in support of an SSA claim. *Id.* But, as described above, the ALJ's decision reflects that she reviewed the supporting evidence in Miller's application for disability payments from her private insurer. Therefore, Miller's argument on this issue has no merit.

No. 22-60541

## C.

Miller next argues that the ALJ failed to articulate, as required by SSA regulations, the "supportability and consistency factors." Citing to district court decisions, Miller contends that the ALJ did not provide a meaningful analysis and, consequently, her decision was legally erroneous.

Under 20 C.F.R. § 404.1520c(b), an ALJ is required to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." The regulation sets forth certain "articulation requirements" and provides that "the most important factors" are "supportability" and "consistency." § 404.1520c(b)(2). Specifically, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in [the claimant's] determination or decision." *Id.*

Although, as described above, the ALJ considered all of the medical opinions Miller submitted in support of her claim, we agree that the ALJ failed to "explain how [she] considered the supportability and consistency factors" as required by § 404.1520c(b)(2).[2] As Miller acknowledges, notwithstanding the ALJ's error, remand is warranted only if the ALJ's error was harmful. *See Shineski v. Sanders*, 556 U.S. 396, 407-08 (2009) (holding that doctrine of harmless error applies to administrative rulings). Specifically, the burden is on Miller to show that the ALJ's "error was

---

[2] The ALJ simply stated: "Furthermore, the physical examination findings do not support a more limiting residual functional capacity than what is shown in the findings herein. (See 1-17F). Therefore, the undersigned did not find the opinion to be persuasive in making the findings herein." These two sentences provide no *explanation* of whether the medical opinions Miller submitted were supported by relevant objective medical evidence and whether those opinions were consistent with evidence from other medical and nonmedical sources.

prejudicial." *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (footnote omitted). Miller fails to meet this burden.

Miller argues that "the medical opinions that were not properly evaluated . . . contained functional limitations that may have changed the outcome of the case."[3] She points out that Nurse Practitioner Sanders found that Miller was limited to sedentary work with certain restrictions, and that Dr. Riser found that Miller could only sit for 30-45 minutes at a time and stand for 30 minutes at a time, along with certain restrictions. Miller then simply asserts that "these limitations may have changed the outcome of the case if they were properly evaluated, and adopted, by the ALJ."

Miller misunderstands her burden here. The ALJ's error was that she did not provide sufficient explanation of her consideration of the medical opinions. As set forth above, her decision makes clear that she considered them. She acknowledged that the opinions contained more limiting restrictions, but she did not find them persuasive. Miller fails to show that if the ALJ had given further explanation, then she would have adopted them. Miller is essentially asking us to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which we cannot do. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). In sum, Miller fails to show how the ALJ's error was harmful.

---

[3] In arguing that the error was harmful, Miller again asserts that the ALJ failed to consider all of the medical opinions. For the reasons stated above, we disagree. The ALJ's decision reflects that she considered all of the records, documents, and opinions contained in evidence.

**D.**

Miller additionally argues that because the ALJ neither adopted her physician's assessment nor the prior administrative findings, the ALJ necessarily substituted her own opinion in formulating her RFC.

"An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster*, 19 F.4th at 718 (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). In doing so, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Id.* "Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Id.* (citations omitted). Instead, an ALJ considers a list of factors articulated in 20 C.F.R. § 404.1520c to decide "what weight, if any, to give to a medical opinion." *Id.*

Here, the ALJ stated that in formulating Miller's RFC, she considered Miller's testimony about her symptoms "and the extent to which th[ose] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in addition to "medical opinions and prior administrative findings." As noted by the district court, in evaluating these sources, the ALJ's determination was "neither a rubber stamp, nor a drastic departure from the records of Plaintiff's treating sources."

Specifically, the ALJ considered prior administrative medical opinions and concluded that although those opinions were supported by the evidence that was available at the time, they were no longer "consistent with the longitudinal evidence of the record as a whole" nor with the evidence presented at Miller's hearing. Based on those records, as updated by additional evidence and testimony, the ALJ found Miller's RFC to be more limited than the prior administrative evaluations reflected. The ALJ also

No. 22-60541

considered Miller's treating physician's findings and concluded that they did "not support a more limiting residual functional capacity" than what she found.

Although Miller is correct that the ALJ did not adopt a specific physician's assessment, there is no requirement that an ALJ do so. Instead, it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (citation omitted).[4] Notably, we have previously affirmed an ALJ's RFC that—like the RFC here—neither "adopted the state agency report verbatim nor accepted the testimony of [a treating physician]," but was nevertheless "based on substantial evidence." *Webster*, 19 F.4th at 719. We find that the RFC here was not impermissibly based on the ALJ's lay opinion and is supported by substantial evidence.

## III.

Based on the foregoing, the district court's judgment is AFFIRMED.

---

[4] Unpublished opinions issued in or after 1996 are "not controlling precedent" except in limited circumstances, but they "may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006).